Good morning, Justices. Michael Quasinger on behalf of the debtor, the plaintiff in the trial court, and now the appellant from the bankruptcy appellate panel's decision. I want to start just by pointing out a couple of things that I think are important in regards to interpretation and or application of the stipulation that was entered into before the trial. And that is that that stipulation was entered into after the parties had done a stipulated chronology of the case found at appellant's excerpts of the record, page 11, and also after the joint pretrial order pursuant to the local rules of the central district, which is found at appellant's excerpts of record, page 18. And most importantly is the fact that both the stipulation and the order on the stipulation were drafted by the attorney for the county. And the order itself states, in relevant part at appellant's excerpts of record, page 39, the court's order, again drafted by the attorney for the county, that the stipulation is hereby approved and, and I quote, shall be binding upon the parties for the purposes of these proceedings. And I have to tell the court that to the extent the county might have had an argument, it is my view and my opinion, and that's why we're here arguing, that that stipulation then resolved the issue. The parties all knew there was an issue in regards to the dispute, but it was resolved. But isn't it, wasn't it quite clear from the petition that they were only seeking to, they only listed the pre-petition debt that was due the county? I don't disagree that that's what was listed. And that amount that they listed didn't include all the interest, fines, penalties, and everything else that the county would be entitled to under state law. I disagree. Nor did it list the lien. Pardon me? It didn't list the lien. Well, if you're talking about the plan itself. Well, first of all, the plan, first I'm talking about the petition itself, or the plan. Yes. My point was different, though, Your Honor. My point was that the stipulation, even if that was all true, the parties then, in a disputed matter, reached a stipulation. Well, but the bankruptcy court had made a prior ruling. That's correct. And an amount had to be determined. Correct. And why, that stipulation, why isn't it just, you know, just sets forth what was owed? What was going to be covered in the plan? It is my view that the stipulation resolved that issue between the parties with knowledge that the court had made a ruling. Let me ask you this. Uh-huh. How much was truly due and owing at the time the plan was approved? Okay. True, I mean, the real amount. We believed at the time, when I say we, actually a different attorney who has since passed did the plan at the time. He believed the amount that was put into the plan of $93.50 was the proper amount. Did he check with the county? As a matter of fact, we don't know because as we stand here today, the gentleman has passed away, and before this case went to trial he had passed away. Well, you know, I don't know why it's so difficult, but, you know, every year your tax bill comes due. Correct. Right? If you don't pay your tax bill on time, a certain amount of interest kicks in. Correct. And then penalties kick in. Correct. And then if you still don't pay it, they have their tax lien and they can foreclose it on your property. Correct. That's a very elaborate process. It's not an easy process under California law. But I don't know why that can't be calculated, you know, why that wasn't easily ascertainable. At the time, it probably could have been. It is my understanding, and I'm only making a representation to the court because Mr. Joyce, who has now passed away, was an informal associate of mine. We worked together on many cases. And it is my understanding he did contact the county to ascertain amounts, and that is why he put the amount of $93.50 into the plan. That was not a dispute at the time, though. What happens if the county was just wrong? They told him that was the amount. He put it in. Everything was fine except some clerk at the county made a mistake. They keep their lien. What happens then? If the court is asking the question, if I understand your question, that if the clerk makes a mistake, is there perhaps a waiver or a stop all argument? If the clerk of the county made a mistake, my thinking would be that the consequence is as of the time of the plan, the amount is what the plan says, but there's a lien for taxes as they accrue. Correct. Is that right? That is true. But understand, and I'm getting ahead of myself based upon the question, but to me, what the BAP was saying in my reading of the Inawali line of cases about this whole due process thing, that the plan must be of proper notice, first of all, the law is not, as I understand it, that a plan cannot create an adversarial relationship where it will end up having the race judicata effect. The question in this case is whether or not the plan gave sufficient notice to that. And the bankruptcy appellate panel may have ruled in their view that it was not sufficient notice. But what the plan did, and if you go to the page one, actually page two of appellant's excerpts of record, this plan is a central district form that was mandated to be used by the debtors in all Chapter 13 cases at the time. This was a form promulgated by the judges of the central district. And so all the debtor did in this case was use the form as required. And besides the fact that on the first page, and I think what is most glaring, is that it says, notice, in big bold letters, this plan contains evidentiary matter which, if not controverted, may be accepted by the court as true. Now, as an attorney, and not necessarily as sophisticated as many of my colleagues here in the room today, to me, that is pretty crystal clear that what we're asserting here is what we believe to be true, and if you don't take action, the court's going to accept it. Now, moving on from that, going to page two, the bankruptcy appellate panel made a very large issue out of the fact that national mortgage, which you go down to the middle of the page, is listed in this class two. Well, class two is where you put all debts secured by real property. In this case, there's no doubt, and nor has anybody ever disputed, that the county was secured. However, the issue is not if they're secured, it's how much they're secured for. And I would point out that the Inouye line of cases comes from the Nobleman line of cases and talks about splitting claims based upon a devaluation. The 506 arguments that there's now been a change in value, and so we're saying that an amount of principal no longer exists. That's not applicable to these facts. This is simply a question of accounting. How much is actually owed as of the date you file the plan? And the bankruptcy appellate panel, again, went on to do this lengthy analysis about the difference between consensual mortgages and statutory taxes. I don't think it matters for purposes of notice to satisfy the due process requirements of the Inouye case. And in my view, it is pretty clear that, as Justice pointed out, that the statutory process or procedure actually defines the term default as to taxes. They're different than consensual liens, but they're still secured debt and had to be in class two by the local rules. Well, the lien is imposed automatically by law for unpaid taxes. And it exists, the end. But this didn't give notice here that this would satisfy any amount that was due under the lien. That's where I disagree. Well, okay. Tell me which clause or which part of this plan gives notice that the payment of this amount will satisfy any lien that the county may have. I'm just going by the wording of class two. That's it? Well, where it says the payment is to be distributed. Hold on, wait, wait. I'm just starting on the second line. If you just read that paragraph, it says claims secured by real property. So there's no doubt that this paragraph deals with claims secured by real property. That's the first thing. That is the debtor's principal residence that identifies the property, the value as of the effective date of the plan of the series of payments to be distributed under the plan on account of each secured claim provided for by the plan. Now, it doesn't say just the amount owed. It says each secured claim. Well, what it says under the column is amount in default. Correct. And that is a term that is defined by state law. It's not in question what does default mean. That means the amount of taxes that have come due and unpaid past the grace period and therefore are in default. Let me ask you this. Does a lien that's imposed by state law, does it encompass both the tax that is due along with any interest and penalties that are also later tacked on? Absolutely. However, they can't do it in violation of the automatic stay. Once the automatic stay is in effect, they cannot impose the penalties and interest pursuant to 362. But my understanding was that by the time this plan was submitted to the bankruptcy court that there had been a certain amount of penalties and interest that had accrued on the unpaid taxes. Yes, that is true. That is not in dispute. The question is what was the total amount owed in default at the time. And understand that no different than under the national mortgage situation, the amount in default is a specifically defined term either by contract or by statute. And this is providing that amount is owed personally. That's the amount owed personally, isn't it? By the debtor. By the debtor and as to the property. But no, so far as the property is concerned, the lien is still present, isn't it? But the lien was always present, Your Honor. Right. Our view is you cannot have a situation when you're talking about secured claims. This isn't saying how much I owe as a debtor. This is saying this is the amount that is in arrears on the secured debt. That's what the whole paragraph says. And just as a policy argument, I have to tell the audience. What do the words mean, then, that each creditor shall retain its lien? In your mind, what do those words mean? To the amount set forth in the plan. Well, I suppose it could also be subsequent amounts that become due, couldn't it? It could, and as a matter of fact, what I was about to say is, as Justice was indicating, as time goes on, even during a Chapter 13 plan, taxes continue to accrue and be due, and the lien will certainly still apply as to those subsequent amounts. And as the bankruptcy appellate panel set forth that I agree with, there could be a situation, and there probably was in this case, where there were taxes that were in default or arrears, and other taxes that had come due but were not yet in default. Some debts get accelerated by an active default, but taxes typically don't, so they would accrue in the future. Have I got that right? Correct. They would continue to accrue. So saying that the creditor shall retain its lien for taxes, even if the amount was entirely correct, it would still mean that there would be an important lien that would be retained subsequently. Correct. And the key comes to this from a policy argument, Justices, it cannot be the law in my mind that a good faith debtor can file a plan, have it served on the county, make payments for five years, as I put forth in my brief, and at the end of that five years get a discharge. That that discharge doesn't affect the lien. It's not a lien stripping, but in our view, it clearly under the cases will act as res judicata effect, because it cannot be the situation that a creditor, what's being suggested by the bankruptcy appellate panel is that a creditor can literally do nothing. And a debtor can rely upon that lack of action and sit back and simply do nothing, and as I put forth in my brief, then come out of the woods. All this talk about what I would refer to as, I think they refer to it as ambush, that the debtor is somehow trying to ambush the secured creditor by burying in the plan some kind of a provision that may modify their secured lien rights. Well, I think it's just as much of an ambush for a creditor to sit back for five years after payments are made in good faith by the debtor, and then come out of the woodwork and say, sorry, we never agreed with that amount. We're now going to foreclose on your property again. That cannot be the law. It cannot be the policy to allow a creditor to then proliferate further litigation and a future bankruptcy on that basis. As a policy, it just can't be. And looking at the, go ahead. No, I'm just, I'll ask you. All right. Well, looking at that situation in this case, because I believe this case is factually distinguishable clearly from all the cases relied upon by the BAP, NRELE stands for the proposition that sufficient notice must be given. Not that a plan can't do it, but that it has to have sufficient notice. And I just believe that a debtor who puts in a plan the amount in default, which is defined by statute as those taxes due and past due the grace period and therefore now in default, clearly sets that forth. There were clearly, theoretically or in actuality, other taxes due at the time of the plan that were owed but not in default, and clearly after the plan was filed and approved, further taxes that accrued and retained a lien. This is not an issue of, like I said in Inouye, of 506, splitting because of the value of the property. This is a case of we put in a good faith amount, and the county sat on their thumbs for five years. And something else that I think is relevant is that the county did file a late claim. Yes. They didn't file it as secured. They filed it as priority. Now, if the court's going to stand on the BAP's decision, we need to go back and retry this case on other issues. And I would point out also that there is not and was not an assertion at any point in the underlying case in the trial court by the county that the plan was ambiguous or didn't give them sufficient notice. That was an issue only raised by the BAP itself. The only assertion made by the county in the trial court was, specifically by law, you can't do it. Well, you can under Inouye. It's just a question of was it sufficient notice. So if the panel is going to rely on the BAP decision, which I think is clearly an error, then we're going to ask for retrial and or remand for further proceedings on all those issues. Counsel, we're way over time. We got interested in what you were saying and forgot to watch the clock. Thank you very much. Thank you. Will I not have rebuttal then? I'll probably give you 30 seconds anyway. Thank you very much. Good morning, Your Honor. Don Hurley, Assistant County Counsel, appearing on behalf of the County of Ventura. I am confused by something in this case. I have no trouble with the county retaining its lien because that lien is going to be important as taxes accrue every year or month or however they accrue in that jurisdiction. I think it's every year in my jurisdiction. So they need an ongoing lien. But I thought when you got a notice from the bankruptcy court saying, here's the debt, that's it. Either you send in something saying, no, the bankrupt owes me more money than that, or that's the debt, whether it's right or wrong. So you better check your own records. And it looks to me as though, now there are a lot of cases and a lot of cases today. I may have my facts all wrong. But it looks to me as though what happened is the debtor sent out something saying, here's what we owe on taxes to the county. The county acquiesced, let it go forward, let a plan be confirmed based on that amount. The debtor paid on that amount. And then subsequently the county comes back later and says, oh, no, you owed us a lot more taxes then. I don't see how that can happen. Actually, I think that that can happen very easily, Your Honor. I believe that. Have I got the facts right? Is that what happened? Essentially, you have the facts right, Your Honor. One important fact that probably hasn't been represented today, but I think it's obvious to all of you, is the central district is the busiest district in all. That cuts no ice with me at all because my experience as a district judge was that the smallest districts had judges busier than one-armed paper hangers because of all the speedy trial act cases and criminal court that required them. I understand, Your Honor. But I think what the cases are really relying upon here, what the focus is, is the plan of reorganization is basically a very quickly filed document. There's a very rapid response, 30 days essentially, to it. From the standpoint of a secured lien holder, such as the county of Ventura and its taxes, that's really insufficient as far as effective notice to the county. And the cases are very clear. You didn't get enough time? We didn't get enough time. I didn't give enough notice, Your Honor. What's going on in the office? I mean, don't you have people that sort of monitor this? We have people that monitor it, Your Honor. But when you get a complaint, as an example, apart from a simple plan of reorganization or a simple notice of the filing of a bank trophy, that is, in fact, a red flag. Does the county have some special ticket that lets them ignore deadlines or are all creditors entitled to more time than the law says? Well, I think the law, as far as the case law here, simply indicates that it's not a question of the time as far as response. It's a question of the notice. And it's a question of the adequacy of the plan of reorganization. We have two issues. I didn't see any problem with the notice. I mean, they mail you that paper. It says, here's how much we owe you. And you look in your records, and that's either right or wrong. Actually, Your Honor, there's a great deal wrong with the notice. The notice itself doesn't provide the actual amount of the taxes. It doesn't provide that those taxes are going to be discharged. And the case law is very clear. Could you back up just one second before you go on? And that is, so after the debtor files the petition, on the petition, the original bankruptcy petition, there should be the amount of money that's owed to various creditors. And that gets sent out to the creditors, right? Yes, Your Honor. And I gather in that petition she listed some amount near this. She listed, I think, a $9,300 amount, which is close to the amount of the plan itself. Now, I gather the county, you know, and there's a period of time for filing claims and whatnot. Yes, Your Honor. Did the county file a claim? We did file a claim. We withdrew the claim, Your Honor. Now, why would you do that? That makes no sense to me. The purpose of the claim was simply to respond to the plan itself. We did follow the plan up to a point. The county did not acknowledge, nor are we required to acknowledge, that the underlying debt was discharged. The underlying debt in this case, as far as the date of the filing of the bankruptcy, was not $9,350. It was over $23,000, I believe. It would have been nice to tell the court before it confirmed a plan that this $477 a month or whatever it was just wasn't going to cut it. Well, Your Honor, we didn't list that debt on the plan. No, no, no. So the petition went out, had an amount on it. There's a period of time for creditors to file their claims. Yes, Your Honor. And you said you filed a claim, but then you withdrew it. Yes, we did, Your Honor. Okay, the claim that you filed was for how much? I'm frankly not certain right now. It was like $30,000, that's it. Yeah, that would have been the amount with the both pre- and post-petition up to that point. But you withdrew that. We withdrew that, Your Honor. So then there was a period of time. Why did you withdraw it? At the time we felt that it was an inappropriate claim. It really didn't accurately reflect the total debt. Okay, so then you withdrew that claim. Yes, Your Honor. And the reorganization plan had not yet been approved. Yes, Your Honor. So then the trustee or whatever, she works out the reorganization plan. I believe the plan was approved, Your Honor. It had been approved when you withdrew your claim? Yes. So at the time this plan was submitted, your claim for $30,000 was in the bankruptcy file? At the time that the plan was submitted, the claim was not in the file, Your Honor. Remember that public entities are entitled to 180 days to file a claim in a situation like this. This was a quick turnaround on the plan. And so our claim was not in the file at the time that the bankruptcy plan was either filed or approved. I see. And there was no effort again from the standpoint. But then you got a copy of this proposed plan. We did get a copy of the proposed plan, Your Honor. And you knew that it was. Somebody in your office knew that this amount differed from the amount of the claim that you ultimately filed. I can't say that with any certainty. I can only say that the county did acknowledge receiving a copy of the plan, Your Honor. So if they looked at their computer, they would know that the amounts didn't match up. I would be speculating on that, but I believe you'd be correct, Your Honor. Okay, so forgetting the amount of time, you said 30 days was just too quick to digest all of this. But if you look at the substance of this, why doesn't it tell you, as Judge Kleinfeld said, why it's like you basically acquiesced in this amount. And we actually did acquiesce in the sense that we accepted the plan as far as the payments. What we didn't accept was the premise that the plan discharged any of the additional taxes on the plan. If the court were to accept- No, you said you used the word additional taxes. Nobody's talking about taxes that came due after the plan was approved. Well, the additional taxes- Because that could have been dealt with. Those taxes that were in addition to the amount that was actually put in the plan itself- You mean interest and penalties on the amount over $9,350. Actually- Pre-petition amounts. Right, the pre-petition- So you're not talking about subsequent taxes. You're not talking about subsequent- No, there were $3,254.40 in post-petition taxes that were included later on. And frankly, the whole reason for the accounting that was submitted was to clarify for the court and also for the debtors as far as what the actual tax liability was as of the date of the filing of the petition. This whole bankruptcy proceeding seems like a total waste of time if you can come back and say, Oh, they owe us more money. Well, Your Honor- Why wrap the whole thing up and have the court supervising? I don't get it. It all seems like a waste of time if you can say later, Well, we hadn't noticed the number was wrong then, but we notice it now, so we want more money than the $9,350 that was the whole basis for the plan. The reason that California law recognizes that taxes are secured debts, Your Honor, is that we basically provide involuntary services. Well, there's no question that they're secured debts. They are secured debts. The mortgage on the house and the second mortgage are secured debts, too, because they provide important things, too, like the money to buy the house. Well, except that- The point of the bankruptcy is you wrap all your debts into a package, you arrange a plan for paying them off, and at least for the past, it's over. Well, Your Honor, the reason that the public debt is different in this case is it's a tax. The public entities are required to provide services to the property owners. They can't simply stop on this. They have to provide schools. They have to provide police. That's why they get a continuing lien. That's why they get a continuing lien, Your Honor. But if they don't pay their future taxes, then eventually the property could be sold. The property will go to the county. It's a long, long time away, but, yes, it can, Your Honor. Would you just clarify for me, you know, this amount of $9,000, when this plan was approved, what was your contention that the amount should have been? The amount should have been $27,009.92, Your Honor. $27,000 that should have been on the plan? That's right, Your Honor. $27,000, give me that again. $27,009.92. I believe all of that was put into the calculation of the amount and the stipulation, Your Honor. Okay. And that was one of the problems that we had, if you look back on this case, was as soon as our office became involved, we did, in fact, provide an accounting to the debtors in this case, which it went through and analyzed exactly how much of the debt it was where it came from. We never got a response back other than we don't think the amount is correct. That left us in the position when trial was coming of having to try the issue of the amount of the debt and the accounting in addition to the damages. It seemed to be a needless and almost impossible bid. Why is it needless? I mean, you're $15,000 apart. If they think they owe $9,000 and you think they owe $27,000 or whatever it was. Well, the amount that It seems like that's worth having a trial for a couple hours, find out how much they owe. They weren't hurt at all, Your Honor. The amount of the stipulation was almost identical with the first statement that we provided to the brodders several, many months before all of this occurred. So as far as having a trial on the issue of accounting, it seemed to be a waste. I'm having trouble following this. All I'm getting is cut us some slack for our mistakes because the times are short, the district is busy, the county is busy. Your Honor, we're simply saying that we have a secured lien on the property. The law recognizes that lien as being secured in California. Also, the law recognizes that a plan of reorganization, unless it effectively gives notice, which it didn't in this case, cannot discharge a secured lien. So you would agree, though, that if they had said the payment of this amount shall satisfy any liens that are due in owing. Not at all, Your Honor. The case would be over. No, no, I do not, Your Honor. Well, what kind of notice do you want then? I want a separate complaint in bankruptcy, Your Honor. Well, that's not required. It is under the cases cited, Your Honor. Basically, all we've got in our notice is a statement, this is the amount of taxes that we say is due in owing. We're going to approve a plan of reorganization. We are given no notice. What would happen with a bank? Take out the public entity. I don't understand how it makes a difference, but you're arguing that it does. What would happen with a bank if the debtor said the bank is threatening to foreclose? I owe $15,000 that I have not paid on my home mortgage. And the bank thinks that it actually is owed $30,000, but it doesn't say so to the court. It doesn't make a claim. It doesn't contest the amount. It goes along with a plan based on the $15,000, agrees not to foreclose on the house. You think the bank can come back right after the bankruptcy and say, oh, pay us another $15,000 right now or we'll foreclose? Your Honor, if that was a secured obligation, the answer would be correct. As far as the foreclosure, after the bankruptcy, they could have, in fact, wasn't paid off. The county did, unfortunately, give a notice of intent to sell on this, which was the violation of the stay. But the county also, in this case, wound up reducing the amount of the obligation for the Broaders in two separate ways. We effected a forgiveness of interest and penalties down to a certain amount, which isn't required under the Bankruptcy Code, of over $4,000. In addition, that was $4,584.44. In addition, we acknowledge that we made an error ourselves in the calculation. We made an error as far as $1,991.94 in prepetition taxes. That's all for the good of the debtors. What we have here is a circumstance where if the court decides to uphold Judge Lax's decision, then we have a debtor being able to just put in a figure, put in a very quick plan of reorganization, go to the taxing entity and say, well, this is the amount, so I don't owe any amount beyond that, even though they didn't give appropriate notice either in the plan itself or through a separate complaint, which is required to give notice to a secured creditor. Let me ask you a couple more questions about procedure. Having never really practiced bankruptcy law, I sometimes don't quite have the procedural steps down completely. But once this plan was circulated to the creditors, there was a time for you to object. Yes, Your Honor. Correct? And you could have filed some objections. Yes, Your Honor. And you didn't do that? We didn't do that, Your Honor. Okay. Now let's just say six months down the line passed and you decided that you recognized there was a mistake had been made. Could you have filed a motion to go in and correct the plan? Well, the fact is we did not, Your Honor. No, no, no, that's not my question. I know you didn't. My question is, is there a procedural mechanism to go into the district, to the bankruptcy court, and file a motion, you know, like a motion to correct plan or to modify plan because a mistake had been made? I'm not an expert in bankruptcy myself, Your Honor. I've only been involved in a similar situation, as you mentioned, at one point in time where there was a plan of reorganization. We objected at the very last minute, but it was before the plan was affirmed. Obviously, the courts are not. I mean, I could see, I'm willing to, you know, I question whether 30 days is or isn't enough, but I could see you might miss it, you know, whatever, but maybe six months down the line you look at it and you recognize there's been a mistake. Usually there must have probably, I would think, I'm not sure, a procedural mechanism to go back in and say, oh, we've got to modify that plan because we made a serious mistake. Not certain on that, Your Honor, unless the motion was based upon an obvious misstatement as far as the. . . So here nothing was done until five years later you realized that all this money was due in owing and you gave a notice to sale. That was all triggered, unfortunately, by the notice of impending sale that was issued by the tax collector. Everything really changed at that point in time. The debtor had been making regular payments, and then once that notice of sale went out, then the mortgage holder made the payment to try to correct that. After that point, then the second complaint, or the initial complaint. . . The mortgage holder gets all nervous that they might lose their property. Of course, they're worried about their security. They might lose their property, so they're going to do whatever they can to make sure that that debt is paid. That's exactly right. We've gone way over time. Thank you, Counsel. Thank you, Your Honor. May I, Your Honor? I'm going to actually key into what the Justice was saying, which is the whole principle of bankruptcy is a fresh start. That's what you learn in bankruptcy class in law school. And what the county is proposing is they can do nothing for five years, come back, as I've said in the brief, and then foreclose and say, hey, we owe you $15,000. That flies in the absolute face of the principle of giving the debtor, who does everything he's supposed to do, the fresh start. Secondly, procedurally, as the Justice had asked, not only can the county object to the plan, after the plan is implemented under the federal rules, they can file their own adversary proceeding. They can make a motion for excusable neglect to set aside any default that has entered against them. And lastly, they're entitled to file a claim up to 180 days after the plan is approved. And in this case, they blew that time also and filed an incorrect plan for an incorrect amount as a priority, not a secure debt, and that's why it was withdrawn but then never refiled. And as a consequence, this debtor in good faith made payments for five years, not for six months, for five years, longer than most civil cases in the superior court ever last. They did what they were supposed to do, and they are absolutely, under the facts of this case, entitled to that fresh start. Lastly, Your Honor, in regards to the allegation regarding these cases that you can't quote-unquote strip a lien, I can't make it clear enough that 506, which is the claim splitting process where you claim that the value has now been reduced by the market and so part of it is unsecured, is not what's happening here. These were defaulted taxes and arrears. This was not a case like in Nobleman or the, I'm sorry, the Etiwale case where the principle of the debt was going to be reduced. This had to do with back payments, which are part principle and interest, but did not affect the ongoing debt as it accrued. And my answer to this court, I think it was the justice that said what would happen or perhaps it was, what would happen in the case of a voluntary lien holder? There is no doubt under this plan the notice was given that the amount in default is X as set forth on page 2. It's not going to strip their lien. It's not going to reduce the principle. That only defines the amount that is alleged by the debtor to be due on the day you file the petition. And in this particular case, as counsel admitted, not only did the petition schedule set forth the amount alleged, the plan secondarily and then with notice set forth with the alleged, this was essentially like a judicial offer and what is the court supposed to do with no action on behalf of the creditor? We better bring it to a close. I'm sorry, Your Honor. I'm just, I'm trying to get everything in. What is the court to do and what is the debtor to think after having made payments for five years? Thank you very much. Thank you, counsel. Broaders v. Ventura is submitted. Next is Culverson v. Davison.
judges: Kleinfeld, Paez, Hart